terial witnesses for the plaintiffs resided in the city of *New-York*, &c.

ALBANY,
August, 1807.
The People
v.
Landt.

He offered, in case the court did not think the affidavit of the plaintiffs sufficient to prevent a change of the *venue*, to stipulate to give material evidence in the city of *New-York*, or be nonsuited.

* *Tidd,* 529.

[* 375]

Rule refused.

## The People *against* Landt.

AN *habeas corpus* had been issued, directed to the defendant, commanding him to bring up the body of a female child, name *Cornetie Harder*. The child was now brought into court. From the return it appeared, that it was the illegitimate daughter of *Maria Brower*, now the wife of the defendant: that in 1799 one *Harder*, the father of the putative father, then an infant, entered into an agreement with one *Brower* the father of the child's mother, by which it was agreed, that all suits concerning the child and its maintenance should cease, and that *Brower* should take care that the child should be suitably maintained during the first year from its birth : *Harder*, on his part, engaged to maintain and educate the child after the first year, until it attained the age of seven years; after which period *Brower* was to save harmless, and indemnify *Harder* from any further expense. The child was about nine years old, and had been supported, pursuant to the agreement, until it attained the age of seven

The mother of a bastard child is entitled to its custody ; but if it appear that the child is abused, the court will interfere in behalf of the child, and direct it to be placed elsewhere.

ALBANY,
August. 1807.

The People
v.
Landt.

[* 376]

* *Sayre.* 93.
5 *East*, 221.
† *Ventris*, 48
158. 210.

‡ 1 *Black.*
*Com.*458,459.

‖ 5 *Term*,278.
5 *East*, 221.
*contra ;* but
see *Rex* v.
*Moseley*, 5
*East.* 224.·
in note.
** 1 *Burrow*,
542.

†† 2 *Strange*,
932, 1 *Wm.*
*Black.* 410. 3
*Burrow*,
1434.

years, when it was returned to *Brower*, who in 1800, at the request of the mother, the wife of the defendant, permitted the child to live with the defendant, and his wife.

*E. Williams* moved to have the child delivered into the custody of the putative father. He read several affidavits, to show that the child had been ill treated, and severely abused by the defendant. He observed, that whether the mother or the putative father of a bastard child was entitled to its custody, was a question not clearly settled. There was some contrariety in the decisions on the subject. That while the child required a nurse, the mother [*]was entitled to the custody, but, afterwards, the father.* As between the putative father and the parish, the right of the father must prevail.† The agreement between the parents of the putative father and mother of the child, cannot affect or take away the rights of the father.

*Parker* and *Champlin*, contra. By the common law, the putative father stands in no relation to a bastard child, nor can he claim any of the rights of a father. The child is considered as *filius nullius.*‡ It has been decided in the *English* courts, that the putative father has no right to the custody of the child.‖ Admitting, however, the right of the putative father, that right must be considered as waived by the agreement entered into by the parents, especially after so long an acquiescence by the father.** At least, the court will give the child its election, whether to reside with its mother or the putative father. The court will always interfere to protect the child, and may, at its discretion, place it in the custody of such person as they may think best.††

*Per Curiam.* The only question before the court is, who has the right to the custody of the child. In the case of illegitimate children, and especially as to females, the mother appears to us to be the best entitled to the custody of them; but this right is not of such a nature as to

prevent the court from interfering to take the infant from the custody of its mother, under special circumstances of ill treatment. In the present case, the evidence of ill treatment has been so far obviated by the affidavits which have been read on the part of the defendant, that we do not think it necessary to interfere, at this time, to take the child from the custody of the defendant and his wife: But we think proper to admonish the defendant, that he be careful to restrain his passions, in future; and that, if hereafter, it should be made to appear that the child is ill treated, the court will interfere for her protection, and remove her from his custody.