# The Town of Hudson *vs.* Oliver Hills and als.

The mother of an illegitimate child has a right to the custody and control of the child as against the putative father, and is bound to maintain it, as its natural guardian.

Where the putative father had given a bond, to indemnify the town against the maintainance of an illegitimate child, *held* that he could not relieve himself from liability to the town by demanding the child at the age of twenty-two months, and offering to maintain it, the mother refusing her assent to part with the child.

This was an action of debt, on a bond dated May 4, 1832, in the sum of $300.

Plea *nil debet*, with a brief statement.    It was admitted that the defendants made the bond described in the writ.

The condition of the bond was, among other things, that Thomas Hills should save the town of Hudson harmless from the support and maintainance of a child of Hannah Sprakes, he having been charged as the father of the child, at May term of the Common Pleas, 1832.

It appeared that in December, 1832—the child being then of the age of about twenty-two months, and the mother destitute of property, and unable to support herself and child—application was made to the selectmen of Hudson for assistance, and they contracted with the father of Hannah Sprakes to keep the child, at 40 cents per week ; and the child has remained under the contract, with the mother, at her father's, ever since, and a considerable sum has been paid to the father for the support of the child.

It appeared that the said Thomas Hills, in July, 1832, offered to take the child, and support it at a suitable place ; and that the selectmen had notice of this, and told him he might take it if the mother would consent ; but the father of Hannah Sprakes refused to let the said Thomas Hills take the child.

**418**

Hudson
*vs.*
Hills & als.

It appeared that the mother of the child was of very moderate capacity to do business, and that the said Thomas Hills had said something of placing the child with the Shakers, if he could obtain it.

The said Thomas again offered to take the child, in December, 1832, and provide a suitable place for it; but the mother and her father would not consent to let him take the child.

Upon this evidence the court directed a verdict to be taken for the plaintiff, subject to the opinion of the court.

*C. G. Atherton*, for the plaintiff.

*Farley*, for the defendant.

Upham, J. It is well settled that the mother of an illegitimate child has a right to the custody and control of the child as against the putative father, and is bound to maintain it as its natural guardian. *The King* vs. *Soper*, 5 *D. & E.* 278; *Ex parte Ann Knee*, 4 *Bos. & Pul.* 148; *Wright* vs. *Wright*, 2 *Mass.* 109; *Somerset* vs. *Dighton*, 12 *Mass.* 383; *do. Petersham* vs. *Dana*, 429; *The King* vs. *Mosely*, 5 *East* 224, *note;* 10 *Ves. Jun.* 59; 4 *Kent's Com.* 2 ed. 216.

By our statute, the heirs of an illegitimate child in the ascending and collateral lines are its mother, and her heirs, (1 N. H. Laws, 353) and the act for the maintainance of illegitimate children provides that the putative father of the child, who shall be holden chargeable for its maintainance, shall be ordered " to pay such sum or sums of money *to the* ' *mother of the child,* or the selectmen of the town where ' the child has its settlement, to be expended in its maintain-' ance, as the court may, under all the circumstances, judge 'reasonable." 1 *Laws N. H.* 296.

The putative father has no right to the custody and control of the child, except, perhaps, as against a stranger; and

his right to this extent is questionable. There are some <span style="float:right">Hudson<br>*vs.*<br>Hills & als.</span> English authorities in favor of such right, but we do not find them recognized in this country. *The King* vs. *Comforth,* 2 *Str.* 1162 ; *do.* vs. *Hodnett,* 1 *D. & E.* 96 ; 11 *East* 20 ; 4 *Kent's Com.* 2 ed. 216.

The circumstance that the defendant in this case had given bond to indemnify the town against the maintainance of the child, altered in no manner the rights of the mother. Most certainly the selectmen or overseers of the poor were under no obligation on account of the bond to separate the child from its mother at the age of twenty-two months, against the mother's consent, as long as she was competent to its care and management.

The defendant's offer to take the child, and maintain it, therefore, under the circumstances of this case, forms no defence to this action. This point has been directly settled in the New-York courts. In the case of *Carpenter & als., Overseers of the Poor,* vs. *Whitman,* 15 *Johns.* 208, it was holden that the mother of an illegitimate child of three or four years old was entitled to its custody, and that the putative father and his surety on a bond could not exonerate themselves from liability, by demanding the child. See, also, *The People* vs. *Landt,* 2 *Johns.* 375.

How far the offer of the defendant would have availed as a defence of this action, had the child been of more advanced age, or had no rights of the mother intervened, it is not necessary now to determine. In any event, nothing short of a perfectly suitable and proper provision for the child could have relieved the defendant from his liability to the town.

In this case, the selectmen were willing that the defendant should take the child, if the mother would consent. They could do no more ; and this offer was highly improper, unless they had the fullest confidence as to the kind treatment and proper maintainance of the child by the defendant.

*Judgment for the plaintiff.*